IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JUSTIN P. HENRY                                                                                           PLAINTIFF

V.                              Civil No. 2:23-cv-02037-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                                DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Justin Henry, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying his claim for child insurance benefits ("CIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I.     Procedural Background

Plaintiff protectively filed his applications for SSI and CIB on May 19, 2017, and June 5, 2017, respectively, alleging an onset date of May 19, 2017, due to back pain, depression, social anxiety, a learning disability, and attention deficit hyperactivity disorder ("ADHD").  (ECF No. 10, pp. 136, 153, 172, 189, 410-424, 457, 471-472).  On his alleged onset date, the Plaintiff was 20 years old with a General Equivalency Diploma and no qualifying past relevant work ("PRW") experience.  (*Id*. at 31, 41, 458, 483-490)

These claims were denied initially on September 28, 2017, and upon reconsideration on October 26, 2017.  (ECF No. 10, p. 208).  Upon Plaintiff's request for hearing, an administrative

hearing was held on January 9, 2019. (*Id*. at 61-94). Administrative Law Judge ("ALJ") Glenn Neel issued an unfavorable decision on June 11, 2019. (*Id*. at 208-220). However, on September 17, 2020, the Appeals Council remanded the case for the ALJ to reevaluate the medical opinions and the Plaintiff's RFC. (*Id*. at 226-229). A second administrative hearing was held telephonically on April 9, 2021.[1] (*Id*. at 102-132). The Plaintiff was present and represented by counsel, Laura J. McKinnon.

On November 23, 2021, ALJ Neel concluded that Plaintiff's degenerative disk disease ("DDD") of the lumbar spine, hypertension, persistent depressive disorder, unspecified anxiety disorder, dependent personality features, and ADHD were severe but did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (ECF No. 10, p. 32). Despite Plaintiff's impairments, the ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, with occasional climbing, balancing, and stooping, and no concentrated exposure to vibrations or hazards, such as driving. (*Id*. at 33). He further limited the Plaintiff to work where the interpersonal contact with coworkers and supervisors is incidental to the work performed, the tasks are learned and performed by rote with few variables and little judgment, and the supervision is simple, direct, and concrete. Based on the vocational expert's ("VE") testimony, ALJ Neel determined Plaintiff could perform work as a cutter and paster, eyeglass frame polisher, and addresser. (*Id*. at 42).

The Appeals Council denied Plaintiff's request for review on January 10, 2023. (ECF No. 10, pp. 8-14). Plaintiff then filed his Complaint to initiate this action on March 16, 2023. (ECF

---

[1] The ALJ also held a hearing on December 14, 2020. (ECF No. 10, pp. 96-101). At that time, however, Plaintiff's counsel, Wayne Young, had recently dissolved his law firm. John Murry, Mr. Young's associate, appeared via telephone and requested a continuance as he was in the process of transitioning to another firm. The continuance was granted, and on December 17, 2020, Mr. Young withdrew as counsel. (*Id*. at 396). Laura J. McKinnon filed an attorney-client agreement on March 3, 2021. (*Id*. at 401).

No. 3). Both parties have filed appeal briefs (ECF Nos. 11, 15), and the matter is ready for Report and Recommendation.

## II. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must

show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder will only consider the Plaintiff's age, education, and work experience in the light of his RFC if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

To qualify for CIB, the Plaintiff must also show that he is the unmarried dependent of a parent receiving social security retirement or disability benefits or a deceased parent who worked and earned enough quarters of coverage to qualify for Social Security Benefits. 20 CFR § 404.350(a). Further, he must prove that his disability began before the age of 22. *Id*.

### III. Discussion

Plaintiff raises three issues on appeal: (1) whether the ALJ fully and fairly developed the record; (2) whether the ALJ conducted a proper subjective complaints analysis; and (3) whether the ALJ's RFC determination is substantially supported by the record. Following a thorough review of the record, the undersigned finds that the overall record fails to provide substantial support for the ALJ's physical RFC determination.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. "The ALJ determines a claimant's RFC based on all relevant evidence in the record,

including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a claimant's RFC is a "medical question" and, therefore, must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. *See Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)); *see also Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff points to a history of back pain. He began treating with Advanced Practice Registered Nurse ("APRN") Carmen Oxford in November 2014. (ECF No. 10, pp. 609-617, 636-639). At that time, an x-ray of his lumbar spine was unremarkable. (*Id*. at 641-642). In January 2015, he reported a small nodule on his left lower back. (*Id*. at 611-612, 634-635). Although APRN Oxford suspected the nodule to be a lipoma, an ultrasound revealed no ultrasonographic evidence of a lipoma. (*Id*. at 619, 641).

On September 26, 2017, Dr. Chester Carlson conducted a consultative physical exam. (ECF No. 10, pp. 668-672). Despite allegations of his back locking up and difficulty walking two to four blocks without dyspnea, Dr. Carlson documented a normal range of motion in all areas; no muscle spasm, weakness, atrophy, or sensory abnormalities; a normal gait/coordination; negative straight leg raise tests bilaterally; and a normal mental status exam. He diagnosed lower back pain, ADHD, and ADD, and he documented no limitations on exam.

Two days later, Dr. Jerry Thomas reviewed the record and found no severe physical impairments. (ECF No. 10, pp. 141-142). Following an independent review of the record on October 24, 2017, Dr. Judith Forte concurred with Dr. Thomas' assessment. (*Id*. at 177-178).

Plaintiff returned to APRN Metcalf on January 29, 2018, with complaints of chronic back pain, indicating his back would sometimes go out on him rendering him unable to walk or move. (ECF No. 10, pp. 691-694).  He had tried over-the-counter anti-inflammatories, but they were ineffective.  On exam, APRN Oxford documented an antalgic gait, pain with motion, tenderness over the left lower paraspinous musculature, and a tender, mobile cyst in the same region.  An x-ray of his lumbar spine showed mild disk narrowing at the L5-S1 level.  (*Id.* at 689).  Noting a normal mental status exam, APRN Oxford referred him to an orthopedic surgeon, prescribed Meloxicam, and discussed ice and heat therapy.

The Plaintiff consulted with orthopedic surgeon, Dr. Thomas Cheyne, on March 14, 2018. (ECF No. 10, pp. 696-698).  In addition to lower back pain, he reported some left thigh discomfort.  He had reportedly been working for his father in the chicken houses doing a fair amount of lifting and bending.  He also helped care for his grandmother, lifting her from one seat to another.  The Plaintiff admitted that although prescribed, he did not take Meloxicam regularly.   X-rays of his lumbar spine were within normal limits, but an exam revealed tenderness across the lower back and positive straight leg raise tests bilaterally, especially on the right.  Dr. Cheyne prescribed physical therapy, a home stretching program, hot showers twice daily, modified activity and an increased dose of Meloxicam.

Thereafter, records indicate the Plaintiff participated in physical therapy from March 12, 2018, until April 20, 2018, at which time he was discharged after meeting most of his treatment goals. (ECF No. 10, pp. 756-785).  When he followed up with Dr. Cheyne on April 27, the Plaintiff reported only minimal relief from Meloxicam and physical therapy.  (*Id*. at 699).  Accordingly, Dr. Cheyne ordered an MRI, and it revealed a central protrusion at the L5-S1 level extending

slightly more to the left with mild impression on the thecal sac and left S1 nerve root.  (*Id*. at 681-688, 704-705).

In May 2018, Dr. Cheyne noted the results of the Plaintiff's MRI but concluded he did not require surgery.  (ECF No. 10, pp. 700-702).  His symptoms had improved with the increased dose of Meloxicam and heat therapy.  Accordingly, Dr. Cheyne encouraged light activity and employment that did not require him to use his back.

In December 2018, APRN Metcalf completed a medical source statement.[2]  (ECF No. 10, pp. 793-797).  She opined that the Plaintiff suffered from chronic low back pain and sciatica with weakness in the legs.  This diagnosis was confirmed by an MRI showing a bulging disk at the L5-S1 level impinging on the sciatic nerve.  His treatment modalities included anti-inflammatory medication, which was helpful, and an orthopedic referral.  APRN Metcalf further indicated the Plaintiff could sit for more than two hours at one time for a total of four hours, stand for one hour at a time for a total of four hours, and stand/walk for a total of four hours.  She also stated he would need to walk around every 30-45 minutes for one to two minutes; a job that permitted shifting positions at will between sitting/standing/walking; and to take an unscheduled break once per week for four to five minutes.  As for exertional limitations, APRN Metcalf limited Plaintiff to lifting less than 10 pounds frequently and up to 20 pounds occasionally, but never more.  Additionally, the Plaintiff could occasionally twist, stoop, crouch/squat, and climb ladders and stairs.  And, lastly, APRN Metcalf indicated the Plaintiff would miss about three days of work per month due to his impairments and/or treatment.

Six days later, the Plaintiff returned to Dr. Cheyne.  (ECF No. 10, pp. 840, 934-939).  Noting his continued significant flare-ups, the doctor ordered a series of lumbar epidural steroid

---

[2] Although APRN Metcalf indicated that she had treated the Plaintiff on only two occasions prior to completing her assessment, the record indicates that she had treated him since at least 2014.

injections ("LESIs"), continued him on Meloxicam, and advised him to take showers twice daily and to remain on light activity. Dr. Cheyne then issued the following work restrictions: 15-pound weight limit, no repetitive bending, lifting, or twisting, and he must be allowed to sit or stand as needed. (*Id*. at 799).

Plaintiff's first LESI was administered on July 25, 2019. (ECF No. 10, pp. 846-849, 931-934). In mid-August, he advised Dr. Cheyne that the efficacy of the injection only lasted for a few days. (*Id*. at 841, 930-931). A second LESI was administered on September 26, after which he reported 90% improvement for several weeks; however, by October 23 the pain had returned. (*Id*. at 850-853, 928-930).

Plaintiff received his third LESI on December 31, 2019. (ECF No. 10, pp. 854-857, 922-924). During a follow-up with Dr. Cheyne on January 27, 2020, he was virtually asymptomatic. (*Id*. at 842, 921). Therefore, Dr. Cheyne refilled the Meloxicam, advised him to continue heat therapy, and recommended he continue only light activity.

On March 18, 2020, the Plaintiff reported receiving 90% improvement from his third LESI that lasted approximately 8-10 weeks, but his pain had again returned, and he desired another injection. (ECF No. 10, p. 914). However, a fourth LESI was not administered until May 12, 2020. (*Id*. at 858-861, 907-909). When following up with Dr. Cheyne two weeks later, Plaintiff was doing well but remained mildly symptomatic. (*Id*. at 843, 906-907). The doctor indicated he would allow the Plaintiff to receive a LESI every three months, and advised him to continue with Meloxicam, heat therapy, and light activity.

On August 11, 2020, the Plaintiff received his fifth LESI. (ECF No. 10, pp. 862-865, 903-905). And, approximately two months later, he reported 70% pain relief lasting five to six weeks. (*Id*. at 903). Thereafter, he received injections on November 10, 2020, February 12, 2021, June 1,

2021, and September 2, 2021. (*Id*. at 866-869, 878-881, 897-903, 970-973, 979-988). Unfortunately, it appears the injections became less efficacious with only 55 percent pain relief reported during a May 2021 follow-up. (*Id*. at 973).

On February 12, 2021, APRN Metcalf completed a second medical source statement. (ECF No. 10, pp. 886-890). She indicated the Plaintiff could not sit for six hours in an eight-hour workday; could not sit/stand/walk in combination for eight hours; could not perform part-time work activities for more than 10 hours in a 40-hour work week; required four or more unscheduled breaks in an eight-hour workday; and had significant limitations reaching, pushing, pulling, handling, and working with small objects bilaterally. APRN Metcalf also stated the Plaintiff could lift less than 10 pounds frequently and occasionally; stand and/or walk a total of two to three hours; sit for a total of two to three hours; would need five or more work/restroom breaks; would need to elevate his feet six or more times per day; could climb, balance, squat, kneel, crouch, bend, stoop, and reach in all directions for less than two hours per day; and must avoid all exposure to hazards.

Despite this evidence, the ALJ concluded that the Plaintiff could sit for at least six hours out of an eight-hour workday, as is required to perform sedentary work. His reliance on the term "mild," as used in the MRI results and x-rays is misplaced. *See* Social Security Ruling 96-9P, 1996 WL 374185, * 3 (defining sedentary work). While it is true that the compression on his thecal sac and left S1 root nerve root is "mild," the disk protrusion at his L5-S1 level was not noted to be "mild." In fact, it was significant enough to cause sciatica and to warrant prescriptions for anti-inflammatory medication and LESIs. And, while all non-surgical treatment is considered "conservative," the mere fact that his condition did not require surgery is insufficient to disregard the fact that sitting for long periods of time can aggravate lower back pain and sciatica. *See* American Association of Neurological Surgeons, *Herniated Disc*, at

https://www.aans.org/Patients/Neurosurgical-Conditions-and-Treatments/Herniated-Disc (Last Accessed December 14, 2023). In fact, prolonged sitting can cause sciatica. *See* Mayo Foundation for Medical Education and Research, *Sciatica*, *at* https://www.mayoclinic.org/diseases-conditions/sciatica/syptoms-causes/syc-20377435 (Last Accessed December 14, 2023).

Therefore, we find remand is necessary to allow the ALJ to reconsider the statements of Dr. Cheyne, Plaintiff's treating orthopedist, and APRN Metcalf indicating that the Plaintiff would require a job that allowed him to sit/stand at will. Additional consideration should be given to the length of time the Plaintiff is able to sit at one time. As such, on remand, the ALJ should obtain a formal RFC assessment from Dr. Cheyne.

### IV. Conclusion

Based on the foregoing, it is recommended that the Commissioner's decision be reversed, and the case remanded back to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 15th day of December 2023.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE